JULIE BRUMMER, APPELLEE, V.
VICKERS, INC., APPELLANT.
659 N.W.2d 838

Filed April 8, 2003.   No. A-02-758.

Tiernan T. Siems and Tom Nelson, Senior Certified Law Student, of Erickson & Sederstrom, P.C., for appellant.

Timothy S. Dowd, of Dowd & Dowd, for appellee.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Vickers, Inc., appeals from a decision of the Workers' Compensation Court review panel affirming in part and reversing in part the trial court's decision. Vickers contends that the review panel erred in remanding to the trial court the issue of whether Julie Brummer was entitled to temporary total disability benefits from January 6 to April 4, 2001. Vickers contends that the review panel also erred in finding that Brummer's workers' compensation claim was unaffected by the severance package Vickers paid her. Vickers also argues that the review panel erred in remanding to the trial court the issue of whether Brummer was entitled to vocational rehabilitation. Finally, Vickers contends that the review panel erred when it did not decide the issue of whether Brummer was entitled to attorney fees. For the reasons stated herein, we affirm the review panel's decision.

## II. BACKGROUND

On September 27, 2000, Brummer filed a petition in the Workers' Compensation Court alleging that she had been injured and that her injury arose out of and in the course of her employment with Vickers. Vickers filed its answer on January 31, 2001. There is no indication in the record why Vickers did not file its answer until January 31.

Trial was held on June 8, 2001. The parties stipulated as follows:

1. The present matter arises out of a work injury sustained by [Brummer] on or about March 1, 2000[,] at which time [Brummer] sustained injuries to her left and right upper extremities.

2. At the time of [Brummer's] injury, her average weekly wage was $700.74, or a weekly benefit of $467.16.

3. Compensability has been accepted and all medical expenses have been paid as have indemnity benefits for [Brummer's] permanent partial disability.

4. The only issues presently in dispute to be resolved at hearing are:

   • Whether [Brummer] returned to substantial employment prior to [Vickers'] plant closure on January 5, 2001;

   • Whether [Brummer] is entitled to temporary total disability from January 6, 2001[,] until reaching maximum medical improvement on April 17, 2001[,] and, if so, whether [Vickers'] payment of severance package to [Brummer] should affect the amount of temporary total disability, if any, to which [Brummer] may be entitled;

   • Whether [Brummer] is entitled to vocational rehabilitation services.

Brummer testified on her own behalf. Medical records and other exhibits were admitted into evidence, and the court entered its award on July 6, 2001. In the award, the trial court found that Brummer had surgery on September 26, 2000, and returned to work on November 17 with restrictions. The trial court stated that Vickers "accommodated [Brummer's] restrictions and put her in a job in the 'tool crib' that she could perform with the restrictions previously set forth." Brummer continued in her " 'tool crib' " position until January 5, 2001. Brummer was laid off on January 5 because the Vickers plant closed. The evidence indicates that when Brummer was laid off, she signed a release in connection with a severance package. This release will be discussed in more detail later in this opinion.

The trial court found that Brummer reached maximum medical improvement (MMI) on April 4, 2001. Given the stipulation mentioned above that the parties entered into, it appears that there is a discrepancy regarding when MMI was obtained. In the stipulation, the parties stated that April 17 was the date Brummer reached MMI. However, no one assigns as error on appeal the trial court's finding that MMI was reached on April 4. The trial court determined that Brummer had a permanent partial disability of 7 percent to the left upper extremity. The trial court stated that Brummer's doctor rated Brummer's other arm on April 17, but the trial court did not make any findings regarding that arm's permanent partial disability.

With regard to whether Brummer was entitled to disability benefits from January 6, 2001, until reaching MMI on April 4, the trial court found that she was entitled to temporary disability benefits for a period of $12^5/_7$ weeks. The trial court

concluded that the time period from November 17, 2000, until January 5, 2001, when Brummer returned to work, was "voluntary" vocational rehabilitation. The trial court found that returning Brummer to a modified job with restrictions was "voluntary vocational rehabilitation as defined by the priorities of [Neb. Rev. Stat. §] 48-162.01(3) [(Cum. Supp. 2000)] between [Brummer and Vickers] and, as such, [Brummer] is entitled to the hybrid payment of 'temporary disability' as found in [Neb. Rev. Stat. §] 48-121(5) [(Cum. Supp. 2000)]" from January 6 until April 4.

The court found that Vickers was not entitled to "a credit or an offset for the payment of severance benefits." The court also found that Brummer was not entitled to vocational rehabilitation "for the reason that [Vickers] has complied with all requirements of vocational rehabilitation as set forth in [§] 48-162.01 in that [Vickers] returned [Brummer] to a new job with [Vickers] or a previous job that had been modified." Additionally, the trial court found that Brummer had made several applications for employment and considered herself "employable."

On July 18, 2001, Vickers filed its application for review with the Workers' Compensation Court review panel. The review panel entered its order of affirmance in part and reversal in part on June 5, 2002. The review panel's order indicates that Brummer cross-appealed the trial court's award. However, we do not have Brummer's cross-appeal in the record before us.

The review panel determined that the issue of whether Brummer was entitled to disability benefits from January 6 until April 4, 2001, should be remanded to the trial court. The review panel found that Brummer was not "in vocational rehabilitation" from November 17, 2000, until January 5, 2001. The review panel noted that Vickers and Brummer agreed at the review hearing that Brummer was not in vocational rehabilitation during the relevant time period. Because Brummer was not in vocational rehabilitation during that time period, the review panel remanded this issue to the trial court to determine if Brummer is entitled to disability benefits from January 6 until April 4.

The review panel affirmed that portion of the trial court's award that denied Vickers a credit for paying Brummer a severance package. The review panel made the following findings:

The evidence is that the employees of Vickers received these severance packages without regard to whether or not the employees were injured. Since this employee was entitled to severance without regard to her injury, it cannot be said that any payment to her was in lieu of worker's compensation.

The review panel stated that Brummer appealed the denial of vocational rehabilitation services. The review panel also remanded this issue to the trial court. The review panel stated that the trial court was "clearly wrong" in finding that Brummer was participating in vocational rehabilitation from November 17, 2000, to January 5, 2001. Because the trial court based its decision to deny Brummer vocational rehabilitation on the fact that Vickers had already complied with the requirements of vocational rehabilitation, the review panel remanded this issue. The review panel ordered the trial court to determine whether Brummer "was able to engage in suitable employment on April 4."

Finally, the review panel concluded that it could not determine attorney fees because some of the issues were remanded to the trial court. This timely appealed followed.

## III. ASSIGNMENTS OF ERROR

Vickers assigns four errors on appeal. First, Vickers contends that the review panel erred when it remanded the issue of temporary total disability benefits to the trial court. Second, Vickers contends that the review panel erred when it decided not to give Vickers a credit or setoff for the severance payment made to Brummer. Third, Vickers contends that the review panel erred when it remanded the issue of vocational rehabilitation to the trial court. Finally, Vickers contends that the review panel erred in not deciding the issue of whether Vickers owed Brummer attorney fees.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the

making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Owen v. American Hydraulics*, 258 Neb. 881, 606 N.W.2d 470 (2000); *Brouilette v. DBV Enters.*, 9 Neb. App. 757, 619 N.W.2d 482 (2000).

In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court review panel, a higher appellate court reviews the findings of the single judge who conducted the original hearing. *Owen v. American Hydraulics, supra*. Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id*.

If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court. *Miller v. E.M.C. Ins. Cos.*, 259 Neb. 433, 610 N.W.2d 398 (2000). Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own determinations. *Id*. See *Owen v. American Hydraulics, supra*.

### 2. AWARD OF BENEFITS FROM JANUARY 6 TO APRIL 4, 2001

Vickers contends that the review panel erred when it remanded to the trial court the issue of whether Brummer was entitled to temporary total disability benefits from January 6 to April 4, 2001. Vickers contends that Brummer is not entitled to such benefits because she was "capable of engaging in substantial employment." Brief for appellant at 18.

Temporary disability contemplates the period the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident. *Green v. Drivers Mgmt., Inc.*, 10 Neb. App. 299, 634 N.W.2d 22 (2001), *reversed in part on other grounds* 263 Neb. 197, 639 N.W.2d 94 (2002). Total disability does not mean a state of absolute helplessness, but means disablement of an employee to earn wages in the same kind of work, or work of a similar nature, that he or she was trained for or accustomed to perform, or any other kind of work which a person of his or her

mentality and attainments could do. *Mata v. Western Valley Packing*, 236 Neb. 584, 462 N.W.2d 869 (1990); *Green v. Drivers Mgmt., Inc., supra.* Whether an injured worker is totally disabled is a question of fact which may be reversed upon appeal only if the finding of the Workers' Compensation Court is clearly wrong. *Green v. Drivers Mgmt., Inc., supra.*

Here, the trial court based its decision to award temporary total disability benefits from January 6 until April 4, 2001, on whether Brummer was in vocational rehabilitation from November 17, 2000, until January 5, 2001. The review panel found that the trial court was incorrect when the trial court found that Brummer was participating in vocational rehabilitation when she returned to work from November 17, 2000, until January 5, 2001. The review panel determined that the trial court's reasoning for awarding disability benefits was incorrect and remanded the issue for further determination of whether Brummer was entitled to such benefits from January 6 to April 4. The review panel ordered the trial court not to use vocational rehabilitation as a reason for awarding temporary disability benefits. We note that Vickers is not arguing that the review panel erred in finding the trial court's reasoning was incorrect, but arguing only the review panel's decision to remand the case. Since Vickers did not assign as error the finding regarding the trial court's reasoning, we will not address it. Alleged errors that are not both assigned and argued in the brief on appeal will not be considered by this court. See *Mondelli v. Kendel Homes Corp.*, 262 Neb. 263, 631 N.W.2d 846 (2001).

Given the review panel's findings that the trial court's reasoning was incorrect, there has been no determination about whether Brummer was totally disabled from January 6 to April 4, 2001. Since there have not been any factual findings by the trial court regarding this issue, there is nothing for us to review. As such, the review panel did not err when it remanded the issue of disability benefits to the trial court for a factual determination regarding whether Brummer was totally disabled from January 6 to April 4. On remand, the trial court is directed to make a determination, on the basis of the record presented at trial, whether Brummer was totally disabled from January 6 to April 4. This assigned error is without merit.

### 3. SEVERANCE PACKAGE

Vickers contends that the review panel erred when it found Brummer's entitlement to disability benefits should not be affected by Vickers' payment of severance benefits. Vickers contends that the severance package should be considered "wages," and therefore, Vickers argues that any disability benefits awarded to Brummer from January 6 to April 4, 2001, should be reduced by the amount of severance paid. Brummer contends that there was no evidence introduced to prove the severance package constituted wages. Before we address the issues of wages, we address the findings of the trial court and review panel.

### (a) Attempted Settlement

The Nebraska Workers' Compensation Act, Neb. Rev. Stat. § 48-101 et seq. (Reissue 1998 & Cum. Supp. 2000), provides that any agreement between a plaintiff and a defendant to settle a workers' compensation claim must be approved by a judge of the Nebraska Workers' Compensation Court. That settlement must also be filed with the Workers' Compensation Court.

Implicit in the trial court's award is a factual finding that when Brummer signed the release in connection with the severance payment, Vickers was attempting to settle Brummer's workers' compensation claim. The release signed by Brummer released Vickers from liability in various situations should Brummer decide to bring a lawsuit against Vickers in the future. Excepted from the release were "unemployment compensation claims, workers' compensation claims, or other health claims which [the employee is] currently *unaware* of, as well as any other claims that cannot be released under applicable statutes." (Emphasis supplied.)

The review panel noted that the trial court was correct in stating that Vickers did not follow the workers' compensation statutes if the payment of severance was in fact an attempt to settle Brummer's workers' compensation claim. To the extent Vickers' payment of severance benefits could be considered an attempted settlement of Brummer's workers' compensation claim, we find that Vickers was required to comply with the workers' compensation statutes. There is no indication in the record before us that Vickers applied to settle the case or filed

the release with the Workers' Compensation Court. For this reason, Vickers is not entitled to a credit or setoff for the severance it paid to Brummer. We now address whether Vickers should otherwise be credited with the amount it paid in severance benefits.

### (b) Vickers' Intent

Vickers relies on *Anderson v. Cowger*, 158 Neb. 772, 65 N.W.2d 51 (1954). In *Anderson*, the employer continued to pay the employee $60 a week, his "regular paycheck," while he was unable to work. The employer contended that since it continued to pay the employee his "regular paycheck," the employer should be entitled to a credit regarding its workers' compensation liability. In *Anderson*, the payment made to the employee was termed "wages" by the Nebraska Supreme Court.

In addressing whether the employer should be credited with the money it had already paid, the Nebraska Supreme Court favorably quoted "Volume 2 of Prof. Arthur Larson's The Law of Workmen's Compensation" as follows:

> "If the payment of wages was intended to be in lieu of [workers'] compensation, credit for the wages is allowed." § 57.41, p. 18.
>
> "* * * the employer can claim no credit if he denied his workmen's compensation liability while paying the wages." § 57.43, p. 20.
>
> . . . "However, since there is seldom any direct evidence on whether such an intention lay behind the payment, it must be inferred from the circumstances surrounding the payment." § 57.41, p. 18.

*Anderson v. Cowger*, 158 Neb. at 784, 65 N.W.2d at 60.

In the instant case, Vickers contends that if we consider the severance package paid to Brummer to be wages, then Vickers is entitled to a credit. We do not read the focus of *Anderson* to be on whether the payment was considered to be wages. Instead, the focus of *Anderson* seems to be on the employer's *intention* when making the payment. As such, we will focus on the circumstances surrounding Vickers' payment of the severance package to determine what Vickers' intention was when it made this payment to Brummer.

On November 25, 2000, Vickers sent a letter to Brummer regarding the closing of the plant and when her last day would be. In this letter, Vickers informed Brummer, "In an effort to ease your financial transition, [Vickers] has agreed to pay health and dental insurance benefits and severance pay to qualifying employees." An exhibit submitted at trial outlines the amount of severance each employee would receive. This exhibit showed that the employee was entitled to a certain amount of severance pay "[b]ased upon [his or her] years of service."

Brummer testified that prior to being laid off, she and all the other employees attended meetings regarding the severance package. Brummer indicated that at these meetings, they discussed negotiations with the union regarding what kind of severance package the employees would receive. Brummer stated that regardless of whether the employees had work injuries, the severance package applied to all employees and they all attended these meetings. When Brummer asked Vickers about the severance package, Vickers stated that "it was compensation [for the employees] since they were closing the plant down."

Based on this evidence, there is nothing to indicate that Vickers *intended* for the severance payment to be made in lieu of workers' compensation benefits. According to the evidence, all employees, including Brummer, were receiving the severance package regardless of any work injuries. Finally, Vickers stated in its November 25, 2000, letter that it was paying the severance package to "ease [the employee's] financial transition." Thus, even if the severance package was considered to be wages, there is no evidence to show Vickers *intended* for the severance package to be in lieu of workers' compensation benefits.

We also note that the evidence indicates that the severance package was negotiated for the employees as part of their contract. According to case law from different jurisdictions, severance payments made under a contractual obligation cannot be credited against workers' compensation benefits. See, *Childers v. Honeywell, Inc.*, 505 N.W.2d 611 (Minn. 1993) (severance payment was contractual obligation and based on past years of service; thus, employer not entitled to credit); *Coca-Cola Bottling Co. v. Rambo*, 576 So. 2d 394 (Fla. App. 1991) (employee contractually entitled to severance pay, so no setoff); *Marion*

*Correctional Inst. v. Kriegel*, 522 So. 2d 45 (Fla. App. 1988) (independent contractual rights cannot be used to offset workers' compensation benefits).

We determine that the review panel did not err when it found that Vickers was not entitled to a credit for paying Brummer a severance package. This assigned error is without merit.

#### 4. VOCATIONAL REHABILITATION

Vickers contends that the review panel erred in remanding the issue of vocational rehabilitation to the trial court. Vickers contends that Brummer was "capable of working from the time she returned to work at Vickers on November 17, 2000[,] and at all times thereafter." Brief for appellant at 32. Vickers essentially argues that when Brummer returned to work at Vickers, Brummer was "engaged in suitable employment," and that therefore, Brummer should not be given vocational rehabilitation services. Brief for appellant at 34.

When as a result of the injury an employee is unable to perform suitable work for which he or she has previous training or experience, he or she is entitled to such vocational rehabilitation services, including job placement and retraining, as may be reasonably necessary to restore him or her to suitable employment. See § 48-162.01. Determination as to whether an injured employee is able to perform the work for which that employee was previously trained is a question of fact to be determined by the trial judge. *Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 639 N.W.2d 94 (2002).

In this case, the trial court denied Brummer vocational rehabilitation because it found that Vickers had already complied with the requirements of § 48-162.01. The trial court determined that no further vocational rehabilitation was warranted. Implicit in the review panel's findings is that Vickers had not complied with the requirements of § 48-162.01, because the review panel concluded that Brummer was not participating in vocational rehabilitation from November 17, 2000, until January 5, 2001. We note, as we did in the section discussing temporary total disability, that Vickers is not appealing the review panel's finding that the trial court's reasoning was incorrect, but only the review panel's decision to remand the issue of vocational rehabilitation.

Therefore, we will not address such finding by the review panel. See *Mondelli v. Kendel Homes Corp.*, 262 Neb. 263, 631 N.W.2d 846 (2001) (alleged errors must be assigned and argued). The review panel remanded the issue of vocational rehabilitation to the trial court for a determination regarding whether Brummer was able to engage in suitable employment on April 4, when she reached MMI.

We do not find that the review panel erred in remanding this issue to the trial court. There have been no factual findings regarding Brummer's ability to engage in suitable employment on April 4, 2001. Therefore, this issue should also be remanded so the trial court can determine, on the basis of the record presented at trial, whether Brummer was able to engage in suitable employment on April 4. This assigned error is without merit.

### 5. ATTORNEY FEES

Vickers contends that the trial court erred when it found it could not determine whether Vickers owed Brummer attorney fees. Vickers contends that it "obtained a reduction in liability" and therefore does not owe Brummer attorney fees. Brief for appellant at 38.

Section 48-125(1) provides in pertinent part:

If the employer files an application for review before the compensation court from an award of a judge of the compensation court and fails to obtain any reduction in the amount of such award, the compensation court shall allow the employee a reasonable attorney's fee to be taxed as costs against the employer for such review . . . .

In this case, it is impossible to determine whether Vickers owes Brummer attorney fees. The only issue affirmed by the review panel was that Vickers was not entitled to a credit or setoff for paying Brummer a severance package. Because there was no decision made on the other issues, the attorney fees issue cannot be decided at this time. Therefore, this assigned error is without merit.

### V. CONCLUSION

The review panel did not err when it remanded the issue of whether Brummer was entitled to temporary total disability benefits from January 6 to April 4, 2001. The review panel did not

err when it determined that Vickers was not entitled to a credit or setoff for the severance payment made to Brummer. The review panel did not err when it remanded the issue of vocational rehabilitation to the trial court. Finally, the review panel did not err when it found that it could not determine whether Vickers owed Brummer attorney fees.

AFFIRMED.