738 N.W.2d 863 (2007)
15 Neb. App. 854
Sara M. GODSEY, Appellee
v.
CASEY'S GENERAL STORES, INC., and Cannon Cochran Management Services, Inc., Appellants.
No. A-06-1223.
Court of Appeals of Nebraska.
August 7, 2007.
*866 Paul F. Prentiss and Megan E. Richey, of Timmermier, Gross & Prentiss, Omaha, for appellants.
Terry L. Rogers, of Terry L. Rogers Law Firm, Lincoln, for appellee.
IRWIN, CARLSON, and MOORE, Judges.
MOORE, Judge.

INTRODUCTION
Sara M. Godsey sought benefits, alleging that she had sustained injuries while employed by Casey's General Stores, Inc. A trial judge of the Nebraska Workers' Compensation Court awarded Godsey temporary total disability (TTD) and future medical payments, among other things. Godsey appealed; Casey's General Stores and its workers' compensation carrier, Cannon Cochran Management Services, Inc. (collectively Casey's), cross-appealed. The review panel affirmed the trial court's findings with regard to TTD and future medical payments, and it is from this affirmance by the review panel that Casey's appeals to this court. Because we agree with the review panel's decision on these issues, we affirm.

BACKGROUND
Godsey was born September 27, 1975, and graduated from high school in 1994. After graduation, Godsey worked at a gas station in York, Nebraska, about 6 months before starting work at Casey's General Stores in Exeter, Nebraska. At Casey's General Stores, Godsey worked her way up from making pizza and doughnuts to being an area supervisor, that is, a liaison between various store managers and the district manager. At the time of her accident and injury, Godsey was supervising stores in the western part of Nebraska, including stores in Ord, Broken Bow, Kearney, Lexington, and North Platte, and she was living in North Platte. In addition to traveling to meetings and to Casey's General Stores in the towns in her area, Godsey's duties included routinely moving cases of pop and beer, loading and unloading a heavy floor-stripping machine from her vehicle and bringing it into a store, performing inspections of store conditions, and transporting heavy boxes of records. Godsey was often on her feet for 9 hours or more per day.
Godsey suffered injuries to her lower back on November 18, 2002, as the result of an accident arising out of and in the course of her employment with Casey's General Stores. Godsey was traveling east on Interstate 80 to attend a supervisor's meeting in Columbus, Nebraska. Godsey was somewhere near Aurora, Nebraska, when a deer "came out of the median." Godsey struck the deer, totaling her car. Godsey was transported to the *867 hospital in Aurora, where she was diagnosed with thoracic and lumbar back strain from the motor vehicle accident. Godsey was released from the hospital on November 18, was given various medications, and was given instructions to contact her physician if her pain did not improve or got worse. Godsey returned to work a couple of days after the accident, because she "got a phone call saying that [her] stores were not good and [she] needed to come back to work." The first 3 weeks after returning to work were difficult for Godsey because she was "on a lot of pain medication" and "in a significant amount of pain." Godsey was not able to perform all of her work duties "the way [she] was supposed to." Godsey was subsequently terminated from her position at Casey's General Stores on June 10, 2003, for "[f]ailure to perform."
On November 21, 2002, Godsey sought further treatment from her family physician, who prescribed physical therapy. Godsey testified that the physical therapy did not work and left her "hurting worse than before." Godsey experienced pain in her lower back that radiated into her buttock and down her leg. Her family physician's records show that the physician did refer Godsey to physical therapy before the accident for "pelvic instability" and also reveal that Godsey had complaints of back pain prior to the accident. Godsey testified that she had not previously experienced pain that radiated into her buttock and leg.
Godsey next sought treatment from Dr. Steven Brestin at an orthopedic clinic in April 2003. Following the initial examination, Brestin's impression was low-back and left lower extremity pain as a result of the motor vehicle accident. Brestin scheduled an MRI scan and recommended that Godsey continue the chiropractic treatment she had previously started. The MRI, performed on April 29, revealed desiccation of the lower three lumbar disks, most significant at L5, and small disk herniations at L3 through L5. After the MRI, Brestin's impression was low-back and left lower extremity pain as a result of the accident and lumbar degenerative disk disease which preexisted the accident. Brestin recommended a series of epidural injections, advised Godsey regarding avoidance of recurrent disk herniations, advised Godsey not to lift over 40 pounds, and told Godsey that she could "exceed the 3.2 mph limit on the treadmill if it is a good quality treadmill that absorbs heel strike[s]." Brestin later also restricted Godsey to driving no more than an hour daily.
In May 2003, Godsey received three epidural injections, each a week apart, which improved her leg pain only transiently. In June, Godsey underwent a myelogram and CT imaging, which revealed signs of disk herniation at L3-4, L4-5, and L5-S1. Brestin concluded that the "herniated 3rd lumbar disc" was a result of the motor vehicle accident. In his office notes for June 3, Brestin also recorded his impression of mild lumbar spinal stenosis at L4-5 and stated that the stenosis was probably aggravated by the accident.
On September 25, 2003, Godsey saw Dr. David Benevides, a neurosurgeon, at the request of Brestin. After his examination of Godsey, Benevides' impressions were of lumbar degenerative disk disease at L3-4, L4-5, and L5-S1 and lumbar disk herniation at L3-4 greater than L4-5 and L5-S1. In his office notes, Benevides stated that back surgery was an alternative, but that he would make it "the very last resort." Benevides stated that Godsey needed to work intensely on a weight loss program, needed to work on an exercise program to strengthen her lumbar muscles and stretch her hamstrings, and needed to avoid narcotics as much as possible. Benevides *868 gave a prescription for 6 weeks of aquatic therapy. In May 2004, Benevides recommended that Godsey see a plastic surgeon about breast reduction, in an attempt to avoid back surgery. Following Benevides' recommendation, Godsey saw Dr. John Heieck, a physician with a cosmetic surgery clinic, who also recommended breast reduction surgery. Heieck stated that the procedure was medically necessary because of Godsey's increased back pain following the accident. Heieck observed that "[Godsey's] neurosurgeons [were] reluctant to operate and perform a back fusion at such an early age" and had consequently recommended reduction mammoplasty.
Godsey saw Dr. Eric Pierson for a neurosurgical evaluation in November 2004. Pierson stated that by history, Godsey's pain was clearly related to the motor vehicle accident, but that he was unable to anatomically localize the cause of the pain. In later correspondence with Godsey's attorney, Pierson explained that he meant that he was unable to pinpoint a specific disk or nerve which could be operated on to offer Godsey a chance of pain relief. Pierson referred Godsey to his partner Dr. David Diamant, who performed a series of nerve blocks at "left L4, L5, S1 facet," which provided Godsey with some pain relief. In 2005, Diamant performed two radiofrequency neurotomy procedures, which did not provide the expected relief. Diamant subsequently referred Godsey to a doctor in Denver, Colorado, for help with pain management.
Dr. Brian Reiss conducted an independent medical examination of Godsey on February 16, 2005. Reiss opined that Godsey's pain was related to the accident, and he confirmed that she was not a candidate for back surgery. Reiss did not believe that breast reduction would be useful, but he suggested a continued exercise conditioning program.
Subsequent to the accident and loss of her job, Godsey also developed severe depression and sought counseling from Sue Huebner, a mental health counselor, at Lutheran Family Services. Although Godsey's counseling "focused on underlying issues," which included childhood sexual abuse and an incident of nonconsensual sex in approximately the summer of 2003, Huebner did not feel that Godsey would have "shown for counseling" absent the accident and its results.
Godsey was evaluated by Dr. Bruce Gutnik in August 2005 for depressive symptoms. Gutnik concluded that Godsey suffered from a recurrent major depressive disorder, and he could not rule out the possibility of posttraumatic stress disorder. Gutnik opined that Godsey's ongoing psychotherapy was not the result of the motor vehicle accident and injury, but, rather, the result of "a recent sexual assault which may well have caused childhood sexual abuse issues to resurface." Gutnik noted the records he reviewed showed that Godsey had "unconsensual sex on a date" a couple months prior to mid-September 2003, that Godsey was assaulted again in late September or early October 2004, and that Godsey received an e-mail from her assailant in April 2005.
Trial was held before a single judge of the compensation court on September 28, 2005, and the judge entered an award on February 8, 2006. We set forth only those findings of the trial judge that are relevant to our decision on appeal. The trial judge found that Godsey had suffered injuries to her lower back on November 18, 2002, and was entitled to benefits as provided under the Nebraska Workers' Compensation Act. The judge awarded TTD benefits as described below. The trial judge concluded that Godsey sustained a 15-percent loss in earning capacity, and the judge also awarded benefits for the loss in *869 earning capacity. The trial judge rejected the argument advanced by Casey's that any permanent disability suffered by Godsey was a progression of her preexisting degenerative disk disease.
The trial judge found that Godsey was temporarily totally disabled for 18 hours on November 19, 2002, 9 hours on January 1, 2003, 9 hours on January 24, 18 hours from March 20 to 21, 7 hours on March 26, 9 hours on April 22, 41.5 hours from April 28 to May 2, and 18 hours from May 8 to 9. The judge awarded TTD benefits of $424.96 per week for 3.24 weeks. In making this award, the judge relied upon trial exhibit 21, Godsey's summary of hours she missed to obtain medical treatment. The judge noted that attached to Godsey's summary were leave slips signed by Godsey's supervisor. The judge was persuaded by this evidence that the TTD awarded was correct.
The judge ordered Casey's to pay certain outstanding medical bills and to reimburse Godsey for payments she had made to Lutheran Family Services in the amount of $2,150. The judge gave Casey's credit for medical payments made as set forth in the evidence at trial. The trial judge found that Godsey was entitled to future medical care and that Casey's should continue to provide and pay for such reasonable and necessary medical care as may be required as a result of the accident and injury at issue. The judge found that medical care should include, but was not limited to, the breast reduction surgery suggested by Benavides and confirmed by Heieck, treatment at Lutheran Family Services for ongoing depression related to the pain Godsey experiences as a result of the motor vehicle accident, and a referral by Diamant to a pain management doctor in Denver.
The trial judge noted the dispute over whether Godsey suffered depression as a result of the accident and injury, and the judge observed that she had been provided with conflicting evidence. The judge noted the report of Godsey's counselor at Lutheran Family Services, Huebner, a licensed mental health professional. The judge also noted that Casey's had presented the opinion of Gutnik. The judge observed that while Gutnik diagnosed Godsey with a major depressive disorder in agreement with Huebner, he related it to sexual abuse Godsey suffered as a child and a more recent sexual assault, not Godsey's accident and injury. The judge noted that Huebner had presented a contrary opinion, and the judge stated that she found Huebner's opinion to be the more persuasive. The judge found that Godsey had not been in any way psychiatrically or psychologically disabled from continuing to work. However, the judge found that Godsey was entitled to be reimbursed for the counseling for which she had already paid and that Casey's should continue to provide and pay for any ongoing counseling causally related to the accident and injury at issue.
Godsey appealed to the review panel, and Casey's cross-appealed. On September 22, 2006, the review panel entered an order of affirmance in part and reversal in part with remand. The review panel affirmed the decision of the trial court in all respects, except for an issue not relevant to our analysis which it reversed and remanded for further disposition. In ruling on the cross-appeal of Casey's, the review panel disagreed with the assertion of Casey's that the award of TTD was erroneous. The review panel noted that Godsey had offered evidence to indicate that she missed various hours of work to attend medical appointments and receive treatment. The panel also noted that Casey's acknowledged in its brief the fact that Godsey did miss some work for medical *870 treatment while she remained employed with Casey's General Stores. The panel observed that the trial judge awarded TTD only for the periods referenced in exhibit 21. Accordingly, the panel found the assignment of error presented by Casey's to be without merit. The review panel also discussed the assertion by Casey's that the award of future medical benefits was erroneous, specifically Godsey's continued counseling for depression as well as the recommended breast reduction surgery. The panel noted the specific evidence in the record relied upon by the trial court to support its decision. The panel stated that the issue was not whether it might have decided the issue differently had it been sitting as trier of fact, but, rather, whether any evidence existed to support the conclusion reached by the trial court. Because such evidence existed in the record, the review panel found the allegation of error presented by Casey's as to future medical benefits to be unfounded. It is from the affirmance by the review panel of the trial court's decision with respect to TTD and future medical benefits that Casey's now appeals to this court.

ASSIGNMENT OF ERROR
Casey's asserts that the review panel erred in affirming the trial court's awards of TTD and future medical benefits.

STANDARD OF REVIEW
Under Neb.Rev.Stat. § 48-185 (Reissue 2004), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. Knapp v. Village of Beaver City, 273 Neb. 156, 728 N.W.2d 96 (2007). Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. Ortiz v. Cement Products, 270 Neb. 787, 708 N.W.2d 610 (2005). With respect to questions of law in workers' compensation cases, an appellate court is obligated to make its own determination. Id.

ANALYSIS

Award of TTD.
Casey's asserts that the review panel erred in affirming the trial court's award of TTD. Temporary disability is the period during which the employee is submitting to treatment, is convalescing, is suffering from the injury, and is unable to work because of the accident. Frauendorfer v. Lindsay Mfg. Co., 263 Neb. 237, 639 N.W.2d 125 (2002). Total disability exists when an injured employee is unable to earn wages in either the same or a similar kind of work he or she was trained or accustomed to perform or in any other kind of work which a person of the employee's mentality and attainments could perform. Id. An employee's return to work does not in every case terminate an employee's total disability from a work-related injury and does not preclude a finding that the employee's total disability continues notwithstanding the return to work. Heiliger v. Walters & Heiliger Electric, Inc., 236 Neb. 459, 461 N.W.2d 565 (1990). The determination as to the length of temporary total disability is one of fact. Yager v. Bellco Midwest, 236 Neb. 888, 464 N.W.2d 335 (1991). Section 48-185 precludes an appellate court's substitution of its view of the facts for that of the Workers' Compensation Court if the record contains sufficient evidence to substantiate *871 the factual conclusions reached by the Workers' Compensation Court. Davis v. Goodyear Tire & Rubber Co., 269 Neb. 683, 696 N.W.2d 142 (2005).
The trial judge in this case awarded TTD benefits for the days that Godsey missed work to receive or convalesce from medical treatment. Godsey was paid for the time that she missed from work on these occasions. Specifically, the record shows that Godsey used and was paid for accumulated hours of either medical leave or vacation leave on the dates that she missed work. Casey's argues that because Godsey received her "full wage compensation" on those dates, she was not disabled and thus not entitled to TTD benefits. Brief for appellants at 17. Casey's also argues that to award Godsey TTD benefits for these occasions permits Godsey to "`double-dip.'" Id. In its answer, Casey's alleged that all benefits had been paid to or on behalf of Godsey, including medical benefits, for which Casey's claimed "full credit." In the award, the trial judge gave Casey's credit for medical payments made but did not give any credit toward the award of indemnity benefits. Although Casey's has not specifically assigned this failure to give credit toward the award of indemnity benefits as error, we consider the following case law because it has some bearing on the assigned error of Casey's regarding the award of TTD.
In Anderson v. Cowger, 158 Neb. 772, 65 N.W.2d 51 (1954), the employee was off work for a period of time following his accident and injury and then returned to work part time. Eventually the employee began working full time but with restrictions. Following the accident and injury, at all times, the employee continued to draw his regular paycheck. On appeal, the Nebraska Supreme Court considered whether the employer should be given credit against the award of indemnity benefits for the regular wages it had continued to pay the employee. The court, citing favorably to "Volume 2 of Prof. Arthur Larson's The Law of Workmen's Compensation," held that "`[i]f the payment of wages was intended to be in lieu of compensation, [i.e., indemnity benefits,] credit for the wages is allowed.'" Anderson v. Cowger, 158 Neb. at 784, 65 N.W.2d at 60. The court further held that if an employee is paid his regular wage although he does no work at all, it is a reasonable inference that the allowance is in lieu of compensation. Id. However, the employer can claim no credit if it denied its workers' compensation liability while paying the wages. Id. More recently, this court considered whether the employer's payment of a severance package to the employee should affect the amount of TTD benefits to which the employee might be entitled in Brummer v. Vickers, Inc., 11 Neb.App. 691, 659 N.W.2d 838 (2003). This court clarified that when determining whether an employer's payment to an employee should be credited against the employee's workers' compensation claim, the focus is on the intent of the employer and the circumstances surrounding the payment. Id. In Brummer, the severance package was given to all employees regardless of whether they had work injuries. We concluded that there was no evidence to show that the employer intended for the severance package to be in lieu of workers' compensation benefits.
In the present case, the money paid by Casey's to Godsey on the dates that Godsey missed work was not technically wages, but, rather, was pay for medical leave and vacation time, benefits already earned by Godsey and not connected with her ability to earn on the dates in question. With regard to sick and vacation pay, "[a] second type of payment for which credit is usually disallowed is any kind of sick pay *872 or vacation pay of which it can be said that the claimant's entitlement to the payment is based on past service rather than on the injury as such." 4 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 82.06[3] at 82-9 (2007). We conclude that the payment of vacation and medical leave to Godsey for the dates which Godsey missed work did not preclude an award of TTD in this case.
The trial judge limited the award of TTD to the dates Godsey missed work to obtain medical treatment as summarized by Godsey in exhibit 21. Godsey's summary is supported by leave slips in the record signed by Godsey's supervisor. Godsey also testified about the side effects she suffered from the various treatments she underwent, her use of pain medication following the accident, and the degree and nature of pain she experienced after the accident compared to the pain from the back and hip problems she had before the accident.
If the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability. Green v. Drivers Mgmt., Inc., 263 Neb. 197, 639 N.W.2d 94 (2002). Although an expert witness may be necessary to establish the cause of a claimed injury, the Workers' Compensation Court is not limited to expert testimony to determine the degree of disability but instead may rely on the testimony of the claimant. Frauendorfer v. Lindsay Mfg. Co., 263 Neb. 237, 639 N.W.2d 125 (2002).
In determining the extent of Godsey's disability in this case, the trial judge was entitled to rely on Godsey's testimony and her evidence concerning the days she received medical treatment. Given our standard of review, the evidence in the record, and the acknowledged authority of the compensation court to make its own determinations of disability, we cannot say that the review panel erred in affirming the trial judge's award of TTD benefits.

Award of Future Medical Benefits.
Casey's asserts that the review panel erred in affirming the trial court's award of future medical benefits, specifically with regard to breast reduction surgery and further counseling. There was conflicting evidence in the record regarding the necessity for these treatments and their connection to Godsey's work-related accident and injury. When the record in a workers' compensation case presents conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. Sweeney v. Kerstens & Lee, Inc., 268 Neb. 752, 688 N.W.2d 350 (2004). It is the role of the Nebraska Workers' Compensation Court as the trier of fact to determine which, if any, expert witnesses to believe. Id.
With regard to counseling, Huebner admitted that her counseling of Godsey dealt with other "underlying issues," but felt that Godsey would not have "shown for counseling" but for "the accident and [its] results." A review of Huebner's records confirms that Huebner addressed issues relating to Godsey's ongoing pain and loss of her job, as well as issues of sexual abuse as a child and recent sexual assaults. On the other hand, Gutnik diagnosed Godsey with a major depressive disorder but related her disorder more closely with the sexual abuse Godsey suffered as a child and the more recent sexual assaults, as opposed to her accident and injury. The trial judge found Huebner's opinion to be more persuasive and ordered Casey's to provide and pay for any ongoing counseling causally related to the accident and injury sustained by Godsey. This ruling contemplates that at some point, the counseling obtained by Godsey may no longer relate to her accident and injury and that Casey's *873 will not be responsible for any unrelated counseling. We will not substitute our judgment for that of the trial court in this regard, and we conclude that the review panel did not err in affirming the trial court's award of future medical care for counseling causally related to Godsey's accident and injury.
The evidence regarding the usefulness or need for breast reduction surgery to reduce the pain suffered by Godsey from her work-related accident was also conflicting. The trial judge relied on the opinions of Benevides and Heieck to support this award. The record indicates that Godsey's neurosurgeons were reluctant to perform back fusion surgery due to Godsey's young age and that reduction mammoplasty was recommended as an alternative to back fusion surgery. Because there is evidence in the record to support the trial judge's decision, we will not substitute our judgment for that of the trial court. The review panel did not err in affirming the trial court's decision to award future medical care in the form of breast reduction surgery.

Attorney Fees on Appeal.
Godsey has filed a motion for the allowance of attorney fees incurred in connection with the defense of this appeal. Pursuant to Neb.Rev.Stat. § 48-125(1) (Cum. Supp. 2006), the motion is granted and Godsey is awarded attorney fees in the sum of $4,800 to be taxed as costs against Casey's.

CONCLUSION
The review panel did not err in affirming the trial court's award of TTD and its award of future medical care.
AFFIRMED.