DAVID J. SNYDER, APPELLANT, V. IBP, INC., APPELLEE.

385 N.W.2d 424

Filed April 18, 1986.   No. 85-135.

Paul W. Deck of Deck & Deck, for appellant.

Wayne E. Boyd of Smith & Boyd, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Plaintiff, David J. Snyder, sustained injury in an accident arising out of and in the course of his employment with defendant, IBP, Inc. The Nebraska Workmen's Compensation Court on rehearing awarded him temporary total disability benefits and further ordered IBP to pay certain medical,

hospital, and drug expenses and litigation costs. The issues raised on this appeal by Snyder's assignments of error are whether (1) the majority of the compensation court erred in finding that he suffered no disability after June 10, 1984, and suffered no loss of earning power, (2) the majority of the compensation court erred in ruling that he was not entitled to vocational rehabilitation services, and (3) the compensation court erred in ruling that he was not entitled to the award of an attorney fee or interest. We affirm.

Snyder is 24 years old, right handed, holds a general equivalency diploma, and trained as a warehouseman while in the U.S. Marine Corps. Following discharge from that service in 1978 up to his employment by IBP in 1982, he worked at a variety of jobs, including as a dishwasher, truckdriver, warehouseman, and construction worker. He also had some on-the-job training as an automobile tuneup technician. He has worked at a variety of tasks at IBP, and on the day of the accident in question, December 27, 1983, was working as a boner and injured his right shoulder when a hook with which he was pulling meat from a bone slipped and jerked his right arm.

Following that accident, Snyder, on June 11, 1984, began to work as a flagman for a construction company at $4.25 an hour. After 2 or 3 weeks he changed his work for the same contractor and began spreading concrete after it was dumped from a truck. On that job he earned approximately $7 per hour and put in 50 to 65 hours per week. He did that until August 3, 1984. While the contractor described the concrete spreading job as "medium duty" work and Snyder as a good worker who made no physical complaints, Snyder testified that he was taking pain medication so he could get through the day. After leaving the concrete contractor, Snyder worked as a uniloader operator at $6.50 per hour. That lasted until August 31, 1984. He was to begin working for another contractor on September 11, 1984, the day after the rehearing, operating a concrete cutting saw, an easier type of work, at an unknown rate of pay. Snyder has also enrolled in a 2-year automobile mechanics course at Western Iowa Technical Community College at Sioux City. Snyder testified that at the time of the subject accident he was earning $8.35 per hour.

Snyder has seen a number of physicians, complaining of right shoulder pain as a consequence of the December 1983 accident. One of these physicians expressed the opinion that Snyder had too much pain to "really go back at least to IBP and be a happy, productive worker" but that the condition would improve. Another physician, when asked whether he had an opinion as to whether Snyder was suffering from a permanent disability of the right shoulder, testified that taking into account the work Snyder had done during the summer of 1984, "he can't be having too much trouble with the shoulder." A third physician expressed the opinion that Snyder had no permanent disability when last seen on January 17, 1984.

Resolution of the first issue, the extent of Snyder's disability, if any, and resultant loss of earning power, if any, involves an evaluation of the evidence. In that task we are bound by the rule that the findings of fact made by the Workmen's Compensation Court after rehearing have the same force and effect as a jury verdict in a civil case and will not be reversed or set aside unless clearly wrong. Neb. Rev. Stat. § 48-185 (Reissue 1984); *Evans v. American Community Stores, post* p. 538, 385 N.W.2d 91 (1986); *Vredeveld v. Gelco Express, ante* p. 363, 383 N.W.2d 780 (1986); *Pollock v. Monfort of Colorado,* 221 Neb. 859, 381 N.W.2d 154 (1986). To state the foregoing rule and the rule that the weight and credibility of expert witnesses is for the trier of fact, *Vredeveld v. Gelco Express, supra,* and *Person v. Red Lion Inn,* 217 Neb. 745, 350 N.W.2d 570 (1984), is to resolve adversely to Snyder his claim that the compensation court erred in finding that he suffered no disability after June 10, 1984.

The statement that Snyder could not be having too much trouble with his shoulder means, in the context of the question asked, that in that physician's opinion there was no permanent disability. See *Unruh v. Industrial Comm.,* 8 Wis. 2d 394, 99 N.W.2d 182 (1959), which recognizes that the task of ascertaining the meaning of words used by medical experts at times presents a problem of interpretation which may be resolved by the sense in which they are used. Moreover, there is the opinion of the third physician that as of January 17, 1984, there was no permanent disability. While it is true that the

compensation court found there was temporary disability beyond that date, the finding of no permanent disability cannot, in face of the medical evidence, be said to be clearly wrong.

Snyder further contends, in effect, that irrespective of what his physical condition may be, the evidence nonetheless establishes that he has suffered a loss of earning power.

In that connection Snyder correctly argues that impairments of the body as a whole are compensated in terms of loss of earning power or capacity rather than in terms of loss of physical function. *Nordby v. Gould, Inc.*, 213 Neb. 372, 329 N.W.2d 118 (1983); Neb. Rev. Stat. § 48-121 (Supp. 1985). He also correctly argues that loss of earning power or capacity is measured by an evaluation of a worker's general eligibility to procure and hold employment, his or her capacity to perform the tasks required by the work, and his or her ability to earn wages in employment in which he or she is engaged or is fitted. *Minshall v. Plains Mfg. Co.*, 215 Neb. 881, 341 N.W.2d 906 (1983); *Akins v. Happy Hour, Inc.*, 209 Neb. 236, 306 N.W.2d 914 (1981), *supp. op.* 209 Neb. 748, 311 N.W.2d 518 (1981). However, Snyder overlooks that once it is determined that no permanent disability, that is to say, no permanent physical impairment of the body as a whole, resulted from the subject accident, then it necessarily follows that no loss of earning power can result from that accident. Loss of earning power or capacity is the means by which a physical impairment to the body as a whole is measured for the purpose of determining the benefits due under the act. In order to apply that measure, there must first be a physical impairment to the body as a whole. See, *Nordby v. Gould, Inc., supra*; *Wolfe v. American Community Stores*, 205 Neb. 763, 290 N.W.2d 195 (1980).

With respect to the second issue, vocational rehabilitation can be ordered only where, among other things, the employee "is entitled to compensation for total or partial disability which is or is likely to be permanent . . . ." Neb. Rev. Stat. § 48-162.01(6) (Reissue 1984). Since the record supports the compensation court's finding that there was no disability after June 10, 1984, there can be no disability which is or is likely to be permanent. There is, therefore, no basis upon which the

compensation court might have ordered vocational rehabilitation.

As to the third issue, following the original hearing before a single judge of the compensation court, Snyder was found to be temporarily totally disabled, and IBP was therefore, among other things, ordered to pay Snyder total disability benefits for an indefinite future period. On rehearing, upon IBP's application, Snyder's total disability benefits were terminated and IBP's total liability thereby reduced. Therefore, Snyder is not entitled to an attorney fee or interest. Neb. Rev. Stat. § 48-125 (Reissue 1984); *Mulder v. Minnesota Mining & Mfg. Co.*, 219 Neb. 241, 361 N.W.2d 572 (1985); *Smith v. Fremont Contract Carriers*, 218 Neb. 652, 358 N.W.2d 211 (1984); *Person v. Red Lion Inn*, 217 Neb. 745, 350 N.W.2d 570 (1984).

Each of Snyder's assignments of error failing, we affirm the judgment of the Workmen's Compensation Court.

AFFIRMED.