STANLEY GREEN, APPELLEE, V.
DRIVERS MANAGEMENT, INC., APPELLANT.
639 N.W.2d 94

Filed February 15, 2002. No. S-00-1156.

Raymond P. Atwood, Jr., and Ryan C. Holsten, of Atwood & Associates Law Firm, P.C., L.L.O., for appellant.

Ronald J. Palagi and Steven H. Howard, of Law Offices of Ronald J. Palagi, P.C., for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCormack, J.

## NATURE OF CASE

Stanley Green injured his back in the course of his employment, and the trial judge of the Nebraska Workers' Compensation Court awarded him payments for temporary total disability and permanent partial disability. Green was also awarded the opportunity to receive vocational rehabilitation services. Green's employer, Drivers Management, Inc. (DMI), was ordered to pay various medical bills. A review panel of the compensation court affirmed the award and assessed attorney fees against DMI. DMI appealed to the Nebraska Court of Appeals, which held that the trial judge erred in awarding Green permanent partial disability benefits and in ordering DMI to pay for certain medical bills which Green had not offered into evidence. Because Green was not entitled to compensation for loss of earning capacity or for attorney fees, the Court of Appeals held that the total award should be reduced. Both parties filed petitions for further review to this court, and both were granted. We affirm in part, and in part reverse.

## BACKGROUND

The facts of this case have been set out in detail in *Green v. Drivers Mgmt., Inc.*, 10 Neb. App. 299, 634 N.W.2d 22 (2001).

The parties stipulated that Green sustained a work-related accident and injury arising out of and in the course of his employment on June 9, 1997, and that his average weekly wage was $988.72.

Green sought treatment in New York following his injury. Dr. Joy Dolorico, Green's first doctor, prescribed muscle relaxants and painkillers. She referred Green to several other doctors who prescribed physical therapy, epidurals, pain medication, and antiseizure drugs.

Green performed a functional capacity assessment in August 1998. The assessment concluded that Green was "capable of working in the heavy work category" based on his performance on strength and agility tests. On September 2, DMI stopped paying compensation benefits and told Green to report back to work within 30 days. Exhibit 33 contains a copy of two notes by Dr. Dolorico, one of which is dated August 28, 1998, and the

other September 2, 1998, both of which state that Green "can go back to work," with the August 28 note specifically stating that Green "can go back to work at a level of maximum medical improvement."

Green consulted Dr. Arnold Criscitiello, an orthopedic surgeon who had been treating Green since June 1998, about the functional capacity evaluation and Dr. Dolorico's release. Dr. Criscitiello advised Green against returning to work until further diagnostic studies could be done. However, Green returned to work for DMI on September 15, 1998. He worked for approximately 2 months driving a truck. On November 17, Green quit work for a second time, stating that the pain had increased in his legs and back and that the numbness in his legs prevented him from safely driving a truck. After an office visit on November 16, Dr. Criscitiello advised Green to stop working and stated, "I don't think that [Green] should be back to full duty work but these are issues that have been overridden [by the functional capacity assessment and independent medical examiners]."

On February 9, 1999, Dr. Myra Shayevitz examined Green to determine whether he was eligible for New York's disability benefits. The State of New York denied Green disability benefits, but Dr. Shayevitz believed that Green needed further diagnostic tests and expressed reservations about his ability to stand, walk, or climb stairs. Green attended physical therapy and took pain medication throughout 1999. An electrodiagnostic test was performed in May 1999, pursuant to Dr. Criscitiello's persistent recommendations. It indicated nerve root irritation in Green's lower back and carpal tunnel syndrome in his right wrist.

Green petitioned for workers' compensation benefits in March 1999. At trial on Green's petition, the parties stipulated that on June 9, 1997, Green "sustained an accident that arose out of and in the course of his employment with [DMI]," that Green's average weekly wage at the time of the accident was $988.72, and that DMI had already paid $14,986.82 of Green's medical bills and had paid Green $27,328 for 64 weeks of temporary total disability compensation. A summary of benefits paid shows that DMI started paying temporary total disability on June 11, 1997, and stopped these payments as of September 1, 1998.

Green testified that at the time of trial, he was 40 years old, was married, had two teenage daughters, and lived with his family in Mexico, New York. Green had a high school education, had taken a 1,000-hour carpentry course during high school, and was "certified" in carpentry. According to Green, his pain and numbness extended from his neck to his legs, feet, arms, and hands. He said he could not drive a truck because he was unable to sit for more than 45 minutes without pain and could not feel his feet depressing the brake pedal because of the numbness in his legs. He stated that he "had maybe one day" without pain since his accident in June 1997.

The trial judge awarded Green temporary total disability and permanent partial disability benefits and the opportunity to participate in vocational rehabilitation training. In addition, the trial judge ordered DMI to pay Eckerd Drug Company $1,462.55; Empi, Inc., $466.55; and Magnetic Diagnostic Resources $291.76, and further required that DMI reimburse Green and his health insurance carrier "for payments made related to the above described accident as the interest of each may appear." The temporary total disability award was $427 per week for $77^6/7$ weeks and covered two different time periods. The permanent partial disability award amounted to $329.54 per week for $222^1/7$ weeks due to what the trial judge determined to be a 50-percent loss of earning capacity.

None of Green's physicians assigned him a permanent impairment rating or gave him permanent physical restrictions. However, the trial judge relied upon Dr. Shayevitz' report, as well as Green's testimony, to find that Green suffered a 50-percent loss of earning capacity as a result of the injury. Additionally, the trial judge pointed out that Green's ability to lift in the "heavy work" classification, according to the August 1998 functional capacity evaluation, was trumped by his testimony that he tried his hardest during the evaluation, that he was in bed 2 to 3 days after the evaluation as a result of his exertion during the test, and that he could physically lift the weight in the evaluation but could not do so continually.

On April 3, 2000, through an order nunc pro tunc, the trial judge amended its award to include the following text: "[Green] will require additional medical care and treatment for which

[DMI] is liable." On April 6, DMI appealed the award to a review panel of the compensation court, which affirmed the award in all respects.

DMI then appealed to the Court of Appeals, where it asserted that the trial judge exceeded her powers and that there was insufficient evidence to support the award. Specifically, DMI alleged that the trial judge erred in (1) finding that Green had suffered a 50-percent loss of earning capacity without evidence of impairment ratings or physical restrictions causally related to Green's injury, (2) finding that Green was temporarily totally disabled from November 19, 1998, through February 9, 1999, (3) ordering DMI to pay medical bills that were not offered into evidence, and (4) awarding Green vocational rehabilitation services.

The Court of Appeals held, in pertinent part, that it was clear error to assign Green a 50-percent permanent partial disability because the record in this case does not contain any evidence that Green suffered a permanent impairment to his body as a whole. *Green v. Drivers Mgmt., Inc.*, 10 Neb. App. 299, 634 N.W.2d 22 (2001). As to vocational rehabilitation, the Court of Appeals concluded that since there is no longer a requirement in the text of Neb. Rev. Stat. § 48-162.01 (Reissue 1998) that an injured worker have a permanent disability to be eligible for vocational rehabilitation benefits, the reversal of Green's permanent partial disability benefits award does not affect the award of vocational rehabilitation. *Green v. Drivers Mgmt., Inc., supra*. The Court of Appeals then vacated the portion of the trial judge's order requiring DMI to reimburse Green and his health insurance carrier for payments related to his June 1997 injury because the lack of evidence and vagueness of the order would require one to speculate about what is required. *Id*.

Both parties then filed petitions for further review with this court, and both petitions were granted.

## ASSIGNMENTS OF ERROR

DMI's petition for further review asserts that the Court of Appeals erred in (1) holding that an injured worker is entitled to vocational rehabilitation under § 48-162.01 absent a finding of permanent impairment and (2) failing to vacate the clearly erroneous factual finding of the trial judge that Green was entitled

to an evaluation for vocational rehabilitation services under § 48-162.01 absent a finding of permanent impairment.

Green's petition for further review asserts, rephrased, that the Court of Appeals erred in (1) overruling the trial judge's determination that he is permanently partially disabled as a result of a work-related accident and has experienced a 50-percent loss of earning capacity and (2) overruling the trial judge's award for future medical benefits issued upon his motion for order nunc pro tunc to augment the original award.

## STANDARD OF REVIEW

■ An appellate court may modify, reverse, or set aside a decision from the compensation court only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Hagelstein v. Swift-Eckrich*, 261 Neb. 305, 622 N.W.2d 663 (2001).

[2] Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996).

[3] An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Fay v. Dowding, Dowding*, 261 Neb. 216, 623 N.W.2d 287 (2001); *Logsdon v. ISCO Co.*, 260 Neb. 624, 618 N.W.2d 667 (2000); *Sheldon-Zimbelman v. Bryan Memorial Hosp.*, 258 Neb. 568, 604 N.W.2d 396 (2000).

## ANALYSIS

### PERMANENT PARTIAL DISABILITY

■Impairments to the body as a whole are compensated in terms of loss of earning power or capacity. *Snyder v. IBP, inc.*, 235 Neb. 319, 455 N.W.2d 157 (1990). In the instant case, Green was assigned a 50-percent loss of earning capacity by the trial judge. The trial judge, however, did not make a specific finding of impairment, and instead commented only on the evidence of Green's disability.

The Court of Appeals relied upon *Snyder v. IBP, Inc.*, 222 Neb. 534, 385 N.W.2d 424 (1986), to hold that there can be no award for disability or loss of earning capacity in the absence of proof of permanent physical impairment to the body as a whole. *Green v. Drivers Mgmt., Inc.*, 10 Neb. App. 299, 634 N.W.2d 22 (2001). The Court of Appeals also held that it cannot rely solely on the claimant's testimony for evidence of permanent impairment to the body as a whole when the injury is subjective in nature. *Id.* The Court of Appeals went on to hold that the record did not demonstrate that Green suffered a permanent impairment to his body, nor did it establish the crucial causal link between the accident and the limitations. *Id.*

■■■ While the claimant has the burden to prove by a preponderance of the evidence that his or her employment proximately caused the injury which resulted in a compensable disability, the issue of causation of injury or disability is one for determination of the trier of fact. *Bernhardt v. County of Scotts Bluff*, 240 Neb. 423, 482 N.W.2d 262 (1992). Along with causation, the issue of whether the claimant has sustained a permanent impairment, and the extent of impairment, are questions of fact. *Hoffart v. Fleming Cos.*, 10 Neb. App. 524, 634 N.W.2d 37 (2001). See, also, *Crouch v. Goodyear Tire & Rubber Co.*, 255 Neb. 128, 582 N.W.2d 356 (1998). In testing the sufficiency of the evidence to support the findings of fact, the evidence must be considered in the light most favorable to the successful party. *Cords v. City of Lincoln, supra.*

■■■ We agree with the Court of Appeals that before permanent partial disability benefits can be awarded, the claimant must prove that he or she has a permanent impairment. Additionally, if the nature and effect of a claimant's injury are not plainly apparent, then the claimant must provide expert medical testimony showing a causal connection between the injury and the claimed disability. *Frank v. A & L Insulation*, 256 Neb. 898, 594 N.W.2d 586 (1999).

■■■ The term "impairment" is a medical assessment, while the term "disability" is a legal issue. *Jorn v. Pigs Unlimited, Inc.*, 255 Neb. 876, 587 N.W.2d 558 (1998), citing *Dayron Corp. v. Morehead*, 509 So. 2d 930 (Fla. 1987). " ' "Permanent medical impairment is related directly to the health status of the

individual, whereas disability can be determined only within the context of the personal, social, or occupational demands, or statutory or regulatory requirements that the individual is unable to meet as a result of the impairment." ' " (Emphasis omitted.) *Phillips v. Industrial Machine*, 257 Neb. 256, 278, 597 N.W.2d 377, 392 (1999) (Gerrard, J., concurring). See, also, *Frauendorfer v. Lindsay Mfg. Co.*, *post* p. 237, 639 N.W.2d 125 (2002).

We agree with the holding of the Court of Appeals that Green had the burden of proving that his injury caused permanent impairment of his body as a whole as a predicate to an award for permanent disability, i.e., loss of earning capacity. We also agree with the Court of Appeals that based on the record in this case, it would be sheer speculation to assign Green a 50-percent permanent partial disability because the record does not indicate that Green suffered a permanent impairment. A workers' compensation award cannot be based on mere possibility or speculation, and if an inference favorable to the plaintiff can only be reached on the basis thereof, then he or she cannot recover. *Green v. Drivers Mgmt., Inc., supra.* We conclude that the trial judge committed clear error in concluding that the evidence in the record was sufficient to allow a finding that Green suffered a 50-percent loss of earning capacity. We thus affirm the decision of the Court of Appeals to reverse and vacate the trial judge's award of permanent disability benefits.

## VOCATIONAL REHABILITATION

The Court of Appeals held that it was not clearly erroneous for the trial judge to find that because Green is unable to perform the work for which he has previous training or experience, he is entitled to vocational rehabilitation benefits, despite the fact that Green was not permanently disabled. We disagree.

In *Snyder v. IBP, Inc.*, 222 Neb. 534, 385 N.W.2d 424 (1986), this court stated that vocational rehabilitation can be awarded only when the claimant has suffered a total or partial disability which was, or is likely to be, permanent. We quoted from a version of § 48-162.01(6) which stated that vocational rehabilitation may be awarded only if a worker's disability " 'is or is likely to be permanent' " and that there was a reasonable probability that such rehabilitation would help restore the

worker to gainful employment. 222 Neb. at 537, 385 N.W.2d at 427. See, e.g., § 48-162.01 (Reissue 1988). However, in 1993, the statute was amended and the language in subsection (6) requiring at least the likelihood of a permanent impairment was removed. Subsection (3) has remained the same, however, and it states, in relevant part, the standard of eligibility for vocational rehabilitation as follows:

> When as a result of the injury an employee is unable to perform suitable work for which he or she has previous training or experience, he or she shall be entitled to such vocational rehabilitation services, including job placement and retraining, as may be reasonably necessary to restore him or her to suitable employment.

See § 48-162.01(3) (Reissue 1998). Determination as to whether an injured employee is able to perform the work for which that employee was previously trained is a question of fact to be determined by the trial judge, and that determination will not be disturbed by an appellate court unless the judge's finding is clearly erroneous. See *Willuhn v. Omaha Box Co.*, 240 Neb. 571, 483 N.W.2d 130 (1992).

The question is, therefore, whether the Court of Appeals erred in affirming the trial judge's decision that Green was entitled to vocational rehabilitation benefits in light of our determination that Green had not submitted evidence of impairment.

We agree with DMI's assignment of error that the Court of Appeals erred as a matter of law in allowing the award of vocational rehabilitation to stand absent a finding of permanent impairment. Without a finding of permanent medical impairment, there can be no permanent restrictions. Without impairment or restrictions, there can be no disability or labor market access loss. Absent permanent impairment or restrictions, the worker is fully able to return to any employment for which he or she was fitted before the accident, including occupations held before the injuries occurred. As § 48-162.01(3) indicates, if one is able to return to work, he or she is not entitled to vocational rehabilitation.

In construing a statute, appellate courts are guided by the presumption that the Legislature intended a sensible rather than absurd result in enacting the statute. *Fay v. Dowding, Dowding*, 261 Neb. 216, 623 N.W.2d 287 (2001).

To hold that a worker can receive vocational rehabilitation benefits absent a finding that the worker is permanently impaired does not amount to a sensible reading of the statute. Thus the factual findings, in light of § 48-162.01, do not support a finding that Green is entitled to vocational rehabilitation as a matter of law or fact. Accordingly, we reverse that portion of the Court of Appeals' opinion upholding Green's award for vocational rehabilitation.

ORDER NUNC PRO TUNC

On March 23, 2000, the trial judge entered its award in favor of Green. The award did not address the issue of future medical care. On April 3, in response to a motion filed by Green, the trial judge issued an order nunc pro tunc modifying the award which stated, "[Green] will require additional medical care and treatment for which [DMI] is liable." The review panel affirmed the entire award, including the order nunc pro tunc. The Court of Appeals vacated the portion of the award ordering DMI to reimburse Green for past and future medical bills as vague and overbroad, but it did not address whether the compensation court had the statutory authority to enter the order nunc pro tunc.

The Nebraska Workers' Compensation Court, as a statutory tribunal, is a court of limited and special jurisdiction and possesses only such authority as is delineated by statute. See *Crabb v. Bishop Clarkson Mem. Hosp.*, 256 Neb. 636, 591 N.W.2d 756 (1999). The only Nebraska Workers' Compensation Act provisions that permit a judge to modify or change previously issued orders are Neb. Rev. Stat. §§ 48-141 and 48-180 (Reissue 1998). *Sheldon-Zimbelman v. Bryan Memorial Hosp.*, 258 Neb. 568, 604 N.W.2d 396 (2000). Section 48-141 allows an award to be modified because of an increase or decrease of incapacity due solely to the injury. Since the order nunc pro tunc in the case at hand is not related to an increase or decrease in Green's incapacity, we look to § 48-180.

Section 48-180 provides that the compensation court may, "on its own motion, modify or change its findings, order, award, or judgment at any time before appeal and within ten days from the date of such findings, order, award, or judgment for the purpose of correcting any ambiguity, clerical error, or patent or obvious error."

 Section 48-180 is the statutory embodiment of nunc pro tunc principles. *Fay v. Dowding, Dowding, supra.* The office of an order nunc pro tunc is to correct a record which has been made so that it truly records the actions had, which, through inadvertence or mistake, were not truly recorded. *Id.*, citing *Interstate Printing Co. v. Department of Revenue*, 236 Neb. 110, 459 N.W.2d 519 (1990). However, it is not the function of an order nunc pro tunc to " 'change or revise a judgment or order, or to set aside a judgment actually rendered, or to render an order different from the one actually rendered, even though such order was not the order intended.' " 261 Neb. at 226, 623 N.W.2d at 295, quoting *Interstate Printing Co. v. Department of Revenue, supra.*

Green would have us believe that the trial judge's statement in the award that Green was entitled to payment of medical expenses incurred as a result of the accident and the judge's statement during trial that ongoing medical benefits will not be awarded if they are not necessitated by the accident and injury indicated that the judge intended to award Green future medical expenses and that it was merely a clerical error for the judge not to clearly include it.

 In *Thornton v. Grand Island Contract Carriers*, 262 Neb. 740, 634 N.W.2d 794 (2001), we held that if future medical expenses are not part of a final award, the judgment is final, and any future claims for medical expenses related to the same accident are absolutely barred unless the requirements of § 48-141 are met. Since the award in that case contained no language that could be reasonably construed to provide for future medical benefits, the plaintiff's claim was barred by Neb. Rev. Stat. § 48-140 (Reissue 1998).

 An order nunc pro tunc may be supported by the judge's notes, court files, other entries of record, or other evidence, oral or written, which is sufficient to establish that the order is required to make the record reflect the truth. See *Continental Oil Co. v. Harris*, 214 Neb. 422, 333 N.W.2d 921 (1983). In this case, however, the order did not make the record reflect what was actually decided, because nothing in the language of the award indicates that the trial judge intended to grant Green future medical benefits. Additionally, § 48-141 is not applicable.

Thus, we determine that the trial judge erred in modifying the award through the order nunc pro tunc which allowed Green to recover future medical payments.

We accordingly affirm, as a matter of law pursuant to *Thornton v. Grand Island Contract Carriers, supra*, the decision of the Court of Appeals reversing and vacating the compensation court's award of future medical benefits.

## CONCLUSION

We affirm the decision of the Court of Appeals reversing and vacating the award of permanent partial disability benefits, as there was no competent medical evidence of permanent impairment or causation between the accident and symptoms Green currently complains of. We also affirm the decision of the Court of Appeals reversing and vacating the award of future medical benefits through the order nunc pro tunc, as it was improper as a matter of law. Because there was no evidence Green was permanently impaired, we reverse the decision of the Court of Appeals upholding the award of vocational rehabilitation, as one cannot be considered unable to return to work for the purposes of vocational rehabilitation if he or she is not permanently impaired.

AFFIRMED IN PART, AND IN PART REVERSED.