IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)


MARSHALL V. FEDEX FREIGHT EAST


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


STEPHEN R. MARSHALL, APPELLEE AND CROSS-APPELLANT,

V.

FEDEX FREIGHT EAST, INC., APPELLANT AND CROSS-APPELLEE.


Filed August 25, 2015.    No. A-14-982.


Appeal from the Workers' Compensation Court: JAMES R. COE, Judge. Affirmed.

Gregory D. Worth, of McAnany, Van Cleave & Phillips, for appellant.

William J. Erickson and Blaine T. Gillett for appellee.


IRWIN, INBODY, and RIEDMANN, Judges.

RIEDMANN, Judge.

### INTRODUCTION

FedEx Freight East, Inc., (FedEx) appeals an award from the Nebraska Workers' Compensation Court finding that Stephen R. Marshall suffered a compensable body as a whole injury and was totally and permanently disabled. Marshall cross-appeals arguing that the compensation court erred in failing to award discovery sanctions. Finding no error by the compensation court, we affirm.

### BACKGROUND

Marshall injured his left elbow in September 2008 while pulling on a pallet jack in the trailer of a truck he drove for FedEx. An orthopedic surgeon, Dr. Mark McKenzie, examined the elbow and in November 2008 performed surgery for an ulnar nerve entrapment and advanced left carpal tunnel syndrome. After surgery, Marshall developed burning pain in his left hand and arm

which then began radiating into his shoulder, neck, and right arm. Marshall was diagnosed with complex regional pain syndrome (CRPS).

In 2009, Marshall had a spinal cord stimulator surgically implanted in an attempt to alleviate his CRPS. In September, Dr. McKenzie opined that Marshall had reached maximum medical improvement, noting that Marshall had moderate severity complex regional pain syndrome with some pain radiating into his opposite [right] arm. He assigned Marshall a 25 percent impairment rating to his left upper extremity. However, about six-months after Dr. McKenzie's letter placing Marshall at maximum medical improvement, Dr. McKenzie noted that Marshall's condition had continued to deteriorate with symptoms progressing in both the left and right upper extremities. Dr. McKenzie noted that he was contemplating amending Marshall's impairment rating in light of his deterioration, but felt that he needed to first consult with an expert on the progression of CRPS. No amended impairment rating from Dr. McKenzie is in the record.

Also in 2009, Marshall began seeing a pain management specialist, Dr. J. Paul Meyer, for treatment of his CRPS. In October 2011, Dr. Meyer implanted a pain pump into Marshall's abdomen in an attempt to alleviate the pain from his CRPS. Dean Venter, the court-appointed vocational rehabilitation counselor, performed a loss of earning capacity assessment and opined that Marshall had suffered a 100 percent loss of earning capacity, or permanent total disability, as a result of his workplace injury.

Dr. Morgan LaHolt conducted an independent medical evaluation and functional capacity examination at FedEx's request in May 2014. Dr. LaHolt agreed that Marshall suffered from CRPS in his left upper extremity and gave him an impairment rating of 7 percent to the left upper extremity only. Dr. LaHolt found no evidence of CRPS or permanent impairment in the right upper extremity. In July, Tyler Sexson, a physical therapist and certified hand therapist, performed a functional capacity evaluation. Sexson found Marshall had impairments to the mobility and strength of both shoulders; the grip and strength, sensation and dexterity of both hands; strength of his right hip and trunk; and balance on a single leg. Sexson also noted that Marshall has an overhead lifting and reaching restriction because of the implanted spinal stimulator.

Venter reviewed the report of Dr. LaHolt and others and affirmed his opinion that Marshall had suffered a total loss of earning capacity. FedEx retained Mr. David Utley to perform a loss of earning capacity analysis and provide a rebuttal to Venter. Utley opined that Marshall had a 55 percent loss of earning capacity.

The compensation court determined that because of the involvement of the right arm, Marshall suffered a two member disability, thus suffering a body as a whole injury. The court adopted Venter's opinion and determined that Marshall was permanently and totally disabled. This appeal follows.

## ASSIGNMENTS OF ERROR

FedEx assigns that the compensation court erred in (1) finding that Marshall has a whole body impairment, and (2) finding that Marshall is permanently and totally disabled. In his cross-appeal, Marshall assigns that the compensation court erred in failing to award attorney's fees and costs incurred to prove a request for admission that FedEx had denied.

STANDARD OF REVIEW

A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499(2013). Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 639 N.W.2d 94 (2002). In testing the sufficiency of evidence to support findings of fact made by the compensation court after rehearing, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Miller v. E.M.C. Ins. Companies*, 259 Neb. 433, 610 N.W.2d 398 (2000).

ANALYSIS

*Whole Body Impairment.*

The central issue on appeal is whether the record supports the compensation court's finding that Marshall suffered a whole body impairment. Permanent impairment to a single scheduled member, such as an arm, is compensated in terms of loss of function, while permanent impairment to two or more scheduled members may be compensated as a body as a whole injury based on loss of earning capacity. Neb. Rev. Stat. § 48-121 (Reissue 2010). Impairment is a medical concept involving what physical abilities have been adversely affected by the injury. *Green v. Drivers Mgmt., Inc.*, 10 Neb. App. 299, 310, 634 N.W.2d 22, 33 (2001) *aff'd in relevant part,* 263 Neb. 197, 639 N.W.2d 94 (2002). Generally, a compensation court must rely at least in part on expert medical evidence to establish permanent physical impairment. *Id.* Although the usual and preferred evidence is for a testifying physician to give a percentage rating of the impairment of a member or the whole body, properly qualified medical testimony need not establish a specific percentage impairment rating in order to be legally sufficient. *Swanson v. Park Place Auto.*, 267 Neb. 133, 672 N.W.2d 405 (2003) (affirming review panel's reversal of compensation court's denial of permanent partial benefits and stating absence of medically assigned permanent functional impairment rating does not preclude an award of loss of earning power).

While the parties agree that Marshall has a permanent impairment to his left arm, FedEx argues that the compensation court erred in finding that Marshall had sustained permanent impairment to his right arm and consequently to his body as a whole. The issue of whether the claimant has sustained a permanent impairment, and the extent of impairment, are questions of fact. *Green v. Drivers Mgmt., Inc.*, 263 Neb. 197, 639 N.W.2d 94 (2002). Accordingly, we will disturb the compensation court's determination only if there is clear error on the record. *Id.*; *see also Hynes v. Good Samaritan Hosp.*, 285 Neb. 985, 830 N.W.2d 499(2013).

We find that the record is sufficient to support the compensation court's finding. The court found that Marshall had a right arm impairment due to pain from complex regional pain syndrome, and cited to the reports of Dr. McKenzie and Dr. Meyer noting effects from CRPS in Marshall's

right arm. The compensation court also noted that the spinal cord stimulator and pain pump caused whole body impairments.

Although Dr. McKenzie did not give Marshall an impairment rating to his right arm, his opinions are legally sufficient medical testimony to demonstrate permanent injury to that arm. *See Swanson v. Park Place Auto.*, *supra*. The only doctors to assign Marshall an impairment rating were Dr. McKenzie and Dr. LaHolt, each of which gave an impairment rating for the left arm only. However, Dr. McKenzie consistently recorded the existence of injury to Marshall's right arm and later noted dissatisfaction with his initial impairment rating. When Dr. McKenzie initially placed Marshall at maximum medical improvement in 2009, he noted pain in the right arm. Several months later Dr. McKenzie noted that the CRPS symptoms had been progressing in both arms and the right hand since his initial finding of maximum medical improvement. Dr. McKenzie noted that in light of the progression he would like to consult with Dr. Meyer in order to amend the impairment rating. Accordingly, Dr. McKenzie's impairment rating for the left arm only does not reflect his medical assessment of Marshall's impairments at the time of trial. In July 2010, Dr. McKenzie opined that Marshall's CRPS had caused a reflexive change in his right arm, had caused significant impairment, and would lead to total disability.

In addition to Dr. McKenzie's medical evidence, other competent evidence in the record supports the trial court's finding of permanent impairment to Marshall's right arm. Sexson's functional capacity exam in July 2014 found physical loss of use in the right upper extremity noting that Marshall "can only perform grasping, fine manipulation and fingering occasionally with his right hand". Although Dr. LaHolt found no impairment to the right upper extremity in his exam, this conflicts with Dr. McKenzie's opinions and the appellate court will not substitute its judgment for the compensation court's when the record presents conflicting medical testimony. *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996). Additionally, the record reflects that Marshall suffered permanent reaching and overhead lifting restrictions due to his spinal stimulator. Because evidence in the record supports the compensation court's finding that Marshall's right arm as well as his left were permanently impaired by his CRPS, the court did not err in analyzing Marshall's claim as a whole body injury under § 48-121(3) rather than a scheduled member injury.

*Permanent and Total Disability.*

FedEx's second assignment of error, the compensation court's finding of permanent and total disability, is dependent on its argument above that Marshall's injuries should have been compensated as a scheduled member injury.

Under § 48-121(3), a compensation court may treat an injury as a body of the whole injury if it involves impairment to two or more scheduled members and resulted in at least a 30 percent loss of earning capacity. We affirm above the compensation court's finding that Marshall's CRPS impaired two scheduled members, both arms. Additionally, the record contains ample evidence that Marshall suffered more than a 30 percent loss of earning capacity. The court-appointed counselor, Venter, found a 100 percent loss of earning capacity Therefore the requirements of § 48-121(3) have been met and the compensation court was within its discretion to find permanent and total disability.

*Discovery Violations.*

In his opening statement at trial, Marshall requested that FedEx "be taxed with the costs of this action" and that he be awarded an attorney fee based upon FedEx's denial of a request for admission that read "Plaintiff has developed a complex regional pain syndrome that has involved both hands, both arms, back and legs." The compensation court stated that it did not have authority to tax costs but it could award an attorney fee. Marshall assigns and argues in his cross-appeal that the compensation court erred in refusing to grant discovery sanctions pursuant to Neb. Ct. R. Disc. § 6-337.

Although the Nebraska Supreme Court rules of civil procedure do not normally apply to cases in the Workers' Compensation Court, the Workers' Compensation Court has specifically adopted the discovery rules found in Neb. Ct. R. Disc. §§ 6-301 to 6-337. See Neb. Workers' Compensation Ct. R. 4.

Rule 37(c) provides:

> (c) Expenses on Failure to Admit. If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he or she may, within 30 days of so proving, apply to the court for an order requiring the other party to pay him or her the reasonable expenses incurred in making that proof, including reasonable attorney fees. The court shall make the order unless it finds that:
>
> (1) The request was held objectionable pursuant to Rule 36(a), or
>
> (2) The admission sought was of no substantial importance, or
>
> (3) The party failing to admit had reasonable ground to believe that he or she might prevail on the matter, or
>
> (4) There was other good reason for the failure to admit.

Neb. Ct. R. Disc. § 6-337(c). Because the workers compensation court has adopted this rule, the court had the authority to tax the costs of proving the denied statement; however, we conclude that the compensation court did not err in refusing to do so because no proper application was made.

The Nebraska discovery rules for civil cases are, with some modification, based on the federal rules of discovery. *Malchow v. Doyle*, 275 Neb. 530, 748 N.W.2d 28 (2008). We look to other courts for guidance in applying our rules of civil procedure which are based on the federal rules. *Tymar, LLC v. Two Men and Truck*, 282 Neb. 692, 805 N.W.2d 648 (2011). In the comments to the 1970 amendments of federal rule 37(c), it states that "Rule 37(c) is intended to provide posttrial relief in the form of a requirement that the party improperly refusing the admission pay the expenses of the other side in making the necessary proof at trial." This requires that the motion for sanctions be made posttrial. See *Cooper v. State Farm Fire & Cas. Co.*, 568 So.2d 687 (Miss. 1990)(stating motion made prior to having proven the admission would be premature).

The Nebraska Supreme Court has held that requests for discovery sanctions under rule 37(c) are collateral and independent actions separate from the trial on the merits. *Kaminski v. Bass*, 252 Neb. 760, 567 N.W.2d 118 (1997). In *Kaminski v. Bass*, although the issue before the court was not the timeliness of a motion for sanctions, but rather which party carries the burden of proof and what record is required, we find it instructive. After obtaining a verdict, Kaminski filed a

motion for expenses incurred in proving a denied request for admission. After an evidentiary hearing, the trial court denied the motion and we affirmed, finding the record was inadequate for appellate review because the complete bill of exceptions was not provided. We reasoned that some evidence may have been presented at trial that the trial judge may have relied upon in denying the motion. On further review, the Nebraska Supreme Court reversed, concluding that a motion for sanctions pursuant to rule 37(c) is a separate and independent proceeding, thereby limiting appellate review to the evidence introduced at that hearing on the motion. As such, it appears that a motion for sanctions under rule 37(c) must be made after trial and a separate evidentiary hearing must be held.

Here, Marshall did not make a separate application to the trial court for discovery sanctions after any part of the request to admit had been proved; rather he requested in his opening statement that the defendant be taxed with the costs of the action and an attorney fee for having denied the requested admission. Although the trial judge was mistaken in his belief that he was without authority to tax costs under rule 37(c), Marshall's request did not comply with the requirements of the rule.

Marshall's counsel never filed a motion seeking discovery sanctions, the court never held a separate hearing on the matter, and the parties never separately presented evidence or argument. Accordingly, Marshall failed to follow the application and hearing procedure in rule 37 that is a prerequisite to discovery sanctions and therefore the trial court did not err in denying Marshall's request for sanctions.

## CONCLUSION

We find that the record supports the compensation court's findings that Marshall suffered a whole body impairment and was totally and permanently disabled. Additionally, we find that Marshall's cross-appeal regarding discovery sanctions is without merit. Finding no error on any of the assigned issues, we affirm.

AFFIRMED.